UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAUREEN B.

                Plaintiff,

v.                                                   1:20-CV-1389
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff                               ELIZABETH HAUNGS, ESQ.
6000 North Bailey Ave, Ste. 1A                    SAMANTHA VENTURA, ESQ.
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 18.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A.     Factual Background

Plaintiff was born in 1966.  (T. 84.)  She completed high school and some college.  (T. 216.)  Generally, Plaintiff's alleged disability consists of mitochondrial disease, bilateral hip replacement, anxiety, depression, post-traumatic stress disorder ("PTSD"), hypertension, and "fatigue, weakness, [and] memory issues."  (T. 86.)  Her alleged disability onset date is April 30, 2016.  (T. 84.)  Her date last insured is December 31, 2020.  (*Id.*)  Her past relevant work consists of registered nurse.  (T. 22, 216.)

### B.     Procedural History

On January 24, 2017, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 84.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On April 25, 2019, Plaintiff appeared before the ALJ, Jason Mastrangelo.  (T. 50-71.)  On June 5, 2019, ALJ Mastrangelo issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-30.)  On August 14, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 13-24.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020, and Plaintiff had not engaged in substantial gainful activity since April 30, 2016.  (T. 13.)  Second, the ALJ found Plaintiff had the

severe impairments of status-post bilateral hip replacement, mitochondrial disease, stable meningioma, degenerative disc disease of the lumbar spine, and mild degenerative joint disease of the shoulder. (T. 13.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 17.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). (T. 17.)[1] The ALJ found Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for six hours in an 8-hour workday; and sitting for six hours in an 8-hour workday. (*Id.*) The ALJ found Plaintiff must avoid concentrated exposure to hazardous machines. (*Id.*) Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-24.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ improperly evaluated her mental impairments at step two and failed to account for mental limitations in the RFC. (Dkt. No. 12 at 10-17.) Plaintiff also filed a reply in which she reiterated her original argument. (Dkt. No. 13.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues Plaintiff's mental impairment was not severe. (Dkt. No. 13 at 9-11.) Second, Defendant argues substantial evidence supports the ALJ's RFC determination. (*Id.* at 12-13.) Third, Defendant argues Plaintiff retained the RFC to perform work that exists in significant numbers in the national economy. (*Id.* at 13-15.) Fourth, and lastly, Defendant argues Plaintiff's contentions are without merit. (*Id.* at 15-18.)

## III. RELEVANT LEGAL STANDARD

### B. Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447. "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted). "If evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448. The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

### C. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

### IV. ANALYSIS

Plaintiff argues the ALJ erroneously found her mental impairments non-severe at step two and such error was harmful because the ALJ failed to consider her mental

impairments in his step four analysis. (Dkt. No. 12 at 12.) Defendant argues the ALJ properly determined Plaintiff's mental impairments were non-severe at step two, his step-two determination was supported by substantial evidence, and substantial evidence supported his RFC determination. (Dkt. No. 13 at 9-13.) For the reasons outlined below, the ALJ properly concluded Plaintiff's mental impairments were non-severe and substantial evidence supported his determination.

### A. Step Two Determination

In general, an impairment or combination of impairments is not severe if it does not significantly limit a plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1522(a). Examples of basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id.* § 404.1522(b)(3)-(6).

An ALJ's decision that an impairment is not severe at step two must be "supported by 'substantial evidence' in the record as a whole." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). A finding that a plaintiff's impairment "is non-severe is not supported by substantial evidence [when] the evidence on which it is based is inconsistent with evidence that [the plaintiff's impairment] significantly impaired her ability to do basic work activities." *Parker-Grose v. Astrue*, 462 F. App'x 16, 17-18 (2d Cir. 2012). "Notably, it is the claimant's burden to show at step two that she has a severe impairment. A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991, 2018 WL 3751292, at *2

(W.D.N.Y. Aug. 7, 2018) (internal citations and quotations omitted), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

Here, consistent with case law and the regulations, the ALJ concluded Plaintiff's mental impairments were non-severe because Plaintiff had mild limitations in the four broad areas of mental functioning. (T. 13-14.) The four areas, or "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). The criteria are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* An ALJ will determine the degree to which plaintiff's medically determinable mental impairment affects the four areas of mental functioning and plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis. *Id.*

Here, the ALJ concluded Plaintiff had mild limitations in all four areas of mental functioning. (T. 13-14.) A mental impairment rated as "none" or "mild" will generally not qualify as "severe," whereas those rated as "moderate," "marked," or "extreme" will qualify as "severe" under step two. *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); 20 C.F.R. § 404.1520a(d)(1) (the ALJ "will generally conclude that [plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities."). The ALJ further stated his RFC assessment reflected "the degree of limitation [he] has found" in the four functional areas. (T. 17.)

In making his step two determination, the ALJ relied in part on the examination and medical source statement provided by consultative examiner Susan Santarpia,

Ph.D.  (T. 14.)  Dr. Santarpia opined Plaintiff was able to understand, remember or apply simple directions and instructions; use reason and judgment to make work related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; be aware of normal hazards; and takie appropriate precautions with normal limits.  (T. 467.)  She further opined Plaintiff had "mild to moderate" limitations in understanding, remembering, and applying complex directions and instructions, regulating emotions, controlling behavior, and maintaining well-being.  (*Id.*)  Dr. Santarpia stated Plaintiff's "difficulties are cause by stressors."  (*Id.*)  The doctor also stated the results of her evaluation appeared to be "consistent with psychiatric and substance abuse problems that until stressors are more stabilized, may interfere with [Plaintiff's] ability to function on a daily basis."  (*Id.*)

The ALJ afforded Dr. Santarpia's opinion "some weight."  (T. 16.)  The ALJ reasoned her opined limitations were "generally supported by, and consistent with the longitudinal record."  (*Id.*)  However, the ALJ did not adopt the doctor's "vague statement" that Plaintiff's psychological disorders and substance abuse problems "may" interfere with her ability to function on a daily basis.  (*Id.*)

Plaintiff presents the argument that Dr. Santarpia's "mild to moderate" limitation in understanding, remember, and apply complex directions and instructions, regulation emotions, controlling behavior, and maintaining well-being equate to being off task more than 10% of the workday and absent two or more days per month.  (Dkt. No. 12 at 16.)  However, Plaintiff's assertion is without merit.  The ALJ's finding that Plaintiff had mild

8

limitations in the functional area of understand, remember, or apply information is consistent with Dr. Santarpia's opinion Plaintiff was able to understand, remember or apply simple directions and instructions.  The ALJ's finding that Plaintiff had mild limitation in the functional area of interact with others is also consistent with Dr. Santarpia's opinion Plaintiff could interact appropriately with supervisors, co-workers, and the public.  The ALJ's finding that Plaintiff had mild limitations in the area of concentrate, persist, or maintain pace is consistent with Dr. Santarpia's opinion Plaintiff could sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work.

The ALJ conclusion that Plaintiff had mild limitations in the functional area of adapting or managing oneself is supported by evidence in the record.  (T. 14.)  This functional area encompasses Plaintiff's ability to regulate emotions, control behavior, and maintain well-being.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E(4)[2].  In concluding Plaintiff had mild limitations in this area, the ALJ considered Plaintiff's reported ability to cook three to four times a week, dress herself daily, read, and watch TV.  (T. 16, 19.)  Indeed, Plaintiff testified she was responsible for cooking a meal once a week, keeping her room clean, and performing various chores such as sweeping, mopping, and dusting.  (T. 62.)  The ALJ further considered the opinion of non-examining State agency medical consultant G. Kleinerman, Psy.D. who opined Plaintiff had mild limitations in this area.  (T. 16, 91.)  Dr. Kleinerman concluded Plaintiff's

---

[2]  Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E(4).

"psychiatric impairment alone does not in and of itself limit [Plaintiff's] ability to perform ordinary tasks in a work setting." (T. 92.)  The ALJ also relied on mental health treatment records and mental status examinations.  (T. 14-16.)

Plaintiff's argument, that Dr. Santarpia's opined mild to moderate limitations in the ability to understand, remember, and apply complex directions and instructions, regulate emotions, control behavior, and maintain well-being "may very well exceed" the off-task and absentee tolerances allowed by employers, merely offers an alternative interpretation of the opinion.  (Dkt. No. 12 at 16.)  However, "[i]t is not enough for [Plaintiff] to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position."  *Dailey v. Comm'r of Soc. Sec.*, 2016 WL 922261, at *6 (N.D.N.Y. Feb. 18, 2016), *adopted*, 2016 WL 917941 (N.D.N.Y. March 10, 2016).

Under the substantial evidence standard of review, Plaintiff must show that the ALJ's findings of fact were so far off that "a reasonable factfinder *would have to conclude otherwise.*"  *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).  In his decision, the ALJ explicitly applied the required "special technique" and supported his conclusions in each of the four areas with more than a scintilla of record evidence.

Dr. Santarpia specifically found Plaintiff's mental impairments would not affect her ability to maintain regular attendance at work.  (T. 467.)  Dr. Santarpia also specifically found Plaintiff's mental impairments would not affect her ability to sustain concentration and perform a task at a consistent pace.  (*Id.*)  Even a finding of a "moderate" limitation, without other evidence in the record to support a need to be off-

10

task as a result of an individual's mental impairment, need not be interpreted as denoting disabling impairment of functioning. *Maria A. R. v. Kijakazi*, No. 6:21-CV-0290, 2022 WL 2954376, at *10 (N.D.N.Y. July 26, 2022). Therefore, Plaintiff's unsupported assertion that Dr. Santarpia's opinion equated to Plaintiff being off-task and unable to maintain attendance is without merit.

Because substantial evidence supported the ALJ's determination Plaintiff's mental impairments caused no more than mild limitations in four broad areas and were therefore non-severe, additional mental restrictions in the RFC were not warranted. Indeed, a finding of only mild limitations at step two would cease the analysis and benefits would be denied. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (the degree of limitation in each of the first three areas is rated "mild" or better, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits); *see Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021) (same).

In addition, the ALJ properly evaluated all of Plaintiff's impairments, severe and non-severe, in the remainder of his decision. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("An RFC determination must account for limitations imposed by both severe and non-severe impairments."); 20 C.F.R. § 404.1545(a)(2). The ALJ noted Plaintiff's mental health diagnosis and subjective symptoms. (T. 18-19.) The ALJ also considered objective observation on examinations and Plaintiff's reports of daily activities. (T. 20-21); *see Daniel James v. Comm'r Soc. Sec.*, No. 1:20-CV-01826, 2023 WL 128521, at *6 (W.D.N.Y. Jan. 9, 2023) (the ALJ provided sufficient analysis at step four and appropriately elected not to include any mental limitations in the RFC).

The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence.  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      January 26, 2023

                                                                              William B. Mitchell Carter
                                                                              U.S. Magistrate Judge